**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CORRIS WHITFIELD, | ) | Case No. 24-cv-04667 |
| | ) | |
| Plaintiff, | ) | Hon. J. |
| | ) | |
| v. | ) | Mag. J. |
| | ) | |
| CITY OF CHICAGO, ILLINOIS; | ) | **JURY TRIAL DEMANDED** |
| CHICAGO POLICE OFFICER | ) | |
| JOHN J. SALINAS #9479; | ) | |
| CHICAGO POLICE OFFICER | ) | |
| ANTHONY ROJAS #15065 | ) | |
| CHICAGO POLICE SERGEANT | ) | |
| DANIEL K. SHINE #1443, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff, Corris A. Whitfield ("Plaintiff" or "Mr. Whitfield"), by and through his attorneys, Lockyer Law LLC, presents his Complaint against the Defendants, the City of Chicago, Illinois ("City of Chicago"), Chicago Police Officer John J. Salinas #9479 ("Defendant Salinas" or "Officer Salinas"), Chicago Police Officer Anthony Rojas #15065 ("Defendant Rojas" or "Officer Rojas"), and Chicago Police Sergent Daniel K. Shine #1443 ("Defendant Shine" or "Defendant Sergeant Shine") (collectively "Defendant Officers") and alleges as follows:

### NATURE OF THE CASE

1.      This is an original jurisdiction action asserting civil rights violations pursuant to 14 U.S.C. § 1983 and claims against the city for its policies and practices that led to Plaintiff's arrest and detention, pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

## JURISDICTION AND VENUE

2.     This Court has jurisdiction of the action pursuant to 28 U.S.C. §§ 1331, 1343 and 1367.

3.     Venue in the Northern District of Illinois is proper pursuant to 28 U.S.C. §1391 because the Defendants all work and are located in this District and the events giving rise to the claims asserted in this complaint occurred in this district.

## PARTIES

4.     At all times relevant hereto, Plaintiff Corris Whitfield was a 29-year-old African American male resident of Lake County, Illinois.

5.     At all times relevant hereto, Defendant Police Officers Salinas (#9479) and Rojas (15065), and Sergeant Shine (#1443) were Police Officers for the City of Chicago and were acting under the color of the law and within the scope of their employment.

6.     The Chicago Police Department Arrest Report notes a police badge number of 336 and that a "Shine, D K" as the supervising officer that approved Plaintiff Whitfield's arrest. A search of open-source databases indicates that there is not a Chicago Police officer with the badge number 336. Open-source records for Chicago Police officers, show only two police officers with the last name Shine. One of the officers identified is Sergeant Daniel K. Shine. Upon information and belief, "D K Shine" is Defendant Sergeant Daniel K. Shine.

7.     The Chicago Police Department Arrest report notes the arresting officer as "#9479 Salinas, J J." Open-source databases list the owner of badge number 9479 as Officer John J. Salinas. Upon information and belief, "#9479 Salinas J. J." is Defendant Officer John J. Salinas.

8. The Chicago Police Department Arrest report notes the arresting officer as "#15065 Rojas A." Open-source databases list the owner of badge number 15065 as Officer Anthony Rojas. Upon information and belief, "#15065 Rojas A." is Defendant Officer Anthony Rojas.

9. Defendant City of Chicago is a municipal corporation, duly incorporated under the laws of the State of Illinois and is the employer and principal of the Defendant Officers.

## FACTUAL ALLEGATIONS

### Plaintiff Whitfield and Defendants' Traffic Stop on May 9, 2023

10. Plaintiff Corris A. Whitfield is a fashion designer and music manager living in Lake County, Illinois.

11. Plaintiff Whitfield travels to Chicago for meetings, client events, and to promote his fashion brand "Life of a Road Runner" and clients in various music genres.

12. On May 9, 2023, Plaintiff Whitfield was visiting Chicago's southside for meetings and to visit one of his artists.

13. On May 9, 2023 Plaintiff Whitfield was wearing his clothing from his "Life of a Road Runner" clothing line, which included skinny jeans and a hoodie.

14. At all times in this Complaint, Plaintiff Whitfield had a dark complexion and long dreadlocks that went past his shoulders.

15. At all times in this Complaint, Plaintiff Whitfield was driving his Gray 2010 Dodge Challenger, which is registered in his name.

16. Plaintiff Whitfield was travelling with his friend, who is African American and in his mid to late twenties.

17. Around 8:00 pm CST on May 9, 2023, Plaintiff Whitfield and a friend stopped at a gas station for gas and snacks for his drive home to Lake County, Illinois.

18.     Shortly after arriving at the gas station, Plaintiff Whitfield reentered his car and made a lawful turn onto Cottage Grove Road.

19.     While pulling out of the gas station, Plaintiff Whitfield observed a police vehicle watching the gas station.

20.     A few minutes after Mr. Whitfield turned onto Cottage Grove Road, he observed the same police vehicle following him.

21.     Plaintiff Whitfield observed that the police vehicle was following him closely.

22.     Due to the police following him, Mr. Whitfield was careful and observed all traffic procedures.

23.     The police vehicle followed Plaintiff Whitfield for 3-5 blocks and through two traffic lights.

24.     Around 8455 S. Cottage Grove Ave., the police vehicle activated its lights and sirens to make a traffic stop.

25.     Plaintiff Whitfield immediately complied and pulled over.

26.     Due to news of police shootings and the climate of police relations with Black communities, Plaintiff Whitfield was scared for his life and that this traffic stop could result in him being shot or killed.

27.     Plaintiff Whitfield had watched YouTube and social media videos about an individual's rights during traffic stops, and believed he could request that a supervising officer be present while the stop is being conducted.

28.     Defendant Salinas approached Plaintiff's vehicle for the stop.

29.     Defendant Rojas approached Plaintiff's vehicle for the stop.

30.     Plaintiff Whitfield rolled down his window halfway so that he could communicate with the officer.

31.     The Defendant Officer asked Plaintiff for identification.

32.     Plaintiff Whitfield presented his driver's license to the Defendant Officer.

33.     The Defendant Officer proceeded to ask Plaintiff to step out of the vehicle.

34.     Plaintiff Whitfield asked if the officer's supervising officer could be present while he stepped out of the car.

35.     The Defendant Officers agreed to the request and returned to the police vehicle.

36.     Upon information and belief, the Defendant Officers called for their supervising officer to arrive.

37.     The Defendant officers returned to their vehicle for at least seven minutes.

38.     After at least seven minutes had passed, one of the Defendant Officers returned to Plaintiff's vehicle and asked, "Corris, what is the last four of your social?"

39.     Plaintiff Whitfield immediately complied and provided the last four of his social.

40.     The officer then returned to the police vehicle.

41.     After the Defendant officers returned to their vehicle for the second time, at least four other police squad cars arrived.

42.     Shortly thereafter, approximately six police officers approached the vehicle with three officers each approaching the driver's and passenger's side of Plaintiff's vehicle.

43.     One of the officers identified themselves as the supervising officer and commanded Plaintiff and his friend to exit the vehicle.

44.     Upon hearing this, Plaintiff Whitfield announced that he would step out of the vehicle.

5

45.     Plaintiff Whitfield slowly opened the driver's side door with his hands up.

46.     Plaintiff announced that he was coming out peacefully and asked the police to not to seize him.

47.     Immediately upon exiting the car, Plaintiff Whitfield was tackled by three officers and slammed against the car.

48.     Plaintiff is 5'6" and weighed approximately 120 lbs. on May 9, 2024.

49.     The force used by the Defendant Officers was unnecessary and excessive.

50.     As a proximate cause of the Defendant's actions, Plaintiff Whitfield experienced scrapes and bruising to his arms and shoulder, and pressed his head firmly against the vehicle.

51.     The force of the Defendants actions stunned Plaintiff Whitfield and caused him physical pain.

52.     This experience scared Plaintiff Whitfield and caused him distress and panic.

53.     Plaintiff Whitfield did not scream, push back, get violent, or utter any insults against the Defendant Officers.

54.     Following the restraint, Plaintiff Whitfield, his friend in the passenger's seat, and Plaintiff's vehicle were searched.

55.     Plaintiff told the cops he did not consent to his car being searched.

56.     At all times, Plaintiff Whitfield complied with the Defendant Officer's commands and did not interfere with their search.

57.     Despite there being no probable cause, the Defendant Officers' search of Plaintiff's vehicle included his back seat, the trunk, and all compartments within the vehicle.

58.     The Defendant Officers did not find any guns or drugs in Plaintiff's vehicle.

6

59.     Upon information and belief, the supervising officer present at all times during this Complaint was Sergeant Daniel K. Shine (1443).

60.     After the search was completed, one of the Defendant Officers asked Defendant Sergeant Shine what should be done with Plaintiff Whitfield.

61.     Defendant Sergeant Shine asked if anything was found in Plaintiff's vehicle.

62.     The Defendant Officer responded that nothing was found in Plaintiff's vehicle.

63.     Defendant Shine then ordered the Defendant Officers arrest Plaintiff resisting arrest and for not listening to the Defendant Officers' orders.

64.     At all times, Plaintiff Whitfield complied with the Officer's orders and did not physically resist at any point during the traffic stop.

65.     Plaintiff Whitfield was arrested and his vehicle was impounded.

66.     Plaintiff Whitfield's friend was forced to walk at night through a dangerous neighborhood to get home.

67.     Following this, Defendant Salinas drafted an arrest report for: (1) "RESISTING/OBSTRUCTING/PC OFF/CORRE EMP/FRTR"; (2) NO TURN SIGNALS-VIOLATION; and (3) DRIVER'S LICENSE/PERMIT – FAIL TO CARRY/DISPLAY."

68.     Defendant Shine ordered and approved these arrest charges.

69.     The arrest of Plaintiff Whitfield was made without probable cause. Immediately before he was arrested over by Defendant Officers and Defendant Sergeant, Plaintiff was not violating any laws, rules or ordinances. As Plaintiff Whitfield was being arrested, he was not resisting arrest or violating any laws, rules, or ordinances. There was no probable cause for the arrest of Plaintiff on May 9, 2023.

***Plaintiff's Arrest and Electronic Monitoring***

70.      Following this, Plaintiff was arrested and taken to Cook County Jail. May 9, 2023 Arrest Report ("Exhibit A").

71.      The night of May 9, 2023, Plaintiff Whitfield was taken into custody and spent the night in Cook County Jail.

72.      In lock up, Plaintiff Whitfield observed that there were several other young African American men with long dreadlocks, wearing hoodies, and skinny jeans that looked like him.

73.      On May 10, 2023, Plaintiff Whitfield was taken to bond court and received electronic monitoring until his next court date on June 12, 2023. Conditions of Bail/Electronic Monitoring ("Exhibit B").

74.      Per the terms of his electronic monitoring, Plaintiff Whitfield was not allowed to return home to Lake County, Illinois.

75.      Due to the conditions of his electronic monitoring, Plaintiff Whitfield was required to rent housing so that he could remain in Cook County and comply with the terms of his electronic monitoring.

76.      The conditions of Plaintiff's electronic monitoring caused Plaintiff Whitfield to suffer emotional distress over his business and inability to go home.

77.      The conditions of Plaintiff's electronic monitoring caused him to lose income and the ability to operate his business by traveling for meetings.

78.      Plaintiff also experienced anxiety, depression, and distress over his pending charges.

79.      On June 12, 2023, Plaintiff Whitfield arrived at his initial court appearance.

80.     Upon speaking with the public defender and the state's attorney, the Cook County State's Attorney's Office dismissed all charges against Plaintiff Whitfield in a manner consistent with his innocence. Notice of Dismissal ("Exhibit C").

81.     As a direct and proximate result of the unlawful actions of the defendants, Plaintiff was injured, including physical injuries, pain and suffering, humiliation, embarrassment, fear, emotional trauma, mental anguish, the deprivation of a normal life, lost time, and lost income.

***Defendant City of Chicago's Practices of Using Traffic Stops as Pretexts for Unlawful Searches***

82.     Upon information and belief, the Defendant Officers were trained and advised by informal and unwritten Chicago Police Department policies to use traffic stops to search for evidence of other crimes.

83.     In 2015, shortly after the American Civil Liberties Union released a report detailing the City's use of stop and frisk, the ACLU of Illinois and CPD reached a settlement agreement to reform the practice of investigatory street stops known as "stop and frisks."

84.     Upon information and belief, Defendant City of Chicago and the Chicago Police Department sought new ways to conduct searches by using traffic stops as a pretext for other crimes.

85.     The unwritten and informal Chicago Police Department policy to conduct a traffic stop as a "search-switch" has been documented as well by the news station ABC-7 Investigation team.

86.     In a news investigation report by the channel ABC-7 on the Chicago Police Department practices, ABC-7 reported that its data team identified a "a surge in traffic stops" since 2016.

87. Per the ABC-7 data analysis, in 2022, the Chicago Police Department made approximately 511,738 traffic stops city wide.

88. ABC-7 reported that it had also obtained a 2020 memo from the Chicago Police Department pushing its supervisors to conduct more traffic stops are needed and noting, "that more traffic stops are needed to assist with the combat against violence. The present traffic stops are not sufficient."

89. The ABC-7 report identified that city has faced at least 24 lawsuits by African American men who were arrested through the Chicago Police Department's unwritten and informal policy to conduct traffic stops as a pretext to search for evidence of other crimes.

90. Upon information and belief, part of the Chicago Police Department's policies was designed to target African American men with dreadlocks and driving expensive cars.

91. Cases alleging similar allegation to this matter can be found in *Lewis v. City of Chi.*, No. 23-cv-16229 (N.D. Ill. filed Nov. 27, 2023) ("Exhibit D") and *Griffin v. City of Chi.*, No. 22-cv-4181(N.D. Ill. Filed Aug. 9, 2022) ("Exhibit E").

92. Both *Lewis v. City of Chicago* and *Griffin v. City of Chicago* were settled by the Defendant City of Chicago. *Lewis v. City of Chi.*, ECF Dkt. No. 27; *Griffin v. City of Chi.*, ECF Dkt. No. 28.

93. In *Lewis v. City of Chicago*, the plaintiff was an African American man with dreadlocks and pulled over for a traffic stop in the same areas as Plaintiff Whitfield. The *Lewis* plaintiff was pulled over and arrested nine-days after Plaintiff Whitfield. Per a recording of the traffic stop that was played during ABC-7's new report, Mr. Lewis refused to provide the officer his driver's license and demanded the basis for his arrest. Mr. Lewis was subsequently arrested.

The police report described that, Mr. Lewis "knowingly resisted the performance of an authorized act . . . in an attempt to defeat an arrest for a violation of 720 ILCS." Ex. D.

94.     In *Griffin v. City of Chicago*, the plaintiff was an African American man named Keith Griffin was pulled over for not wearing a seatbelt. During the stop, the officers asked the *Griffin* plaintiff if there were any drugs or weapons in the car to which Mr. Griffin denied. The police officer made several comments that the *Griffin* plaintiff was "shaking" during the stop and used it as a basis to ask him to step out of his vehicle. Following this, the officers conducted a search of Mr. Griffin's car and did not find any illegal. Ex. E.

***Defendants' Lack of Probable Cause and Dismissal of Charges***

95.     Upon information and belief, the area Defendant Officer Rojas and Defendant Officer were patrolling the 6th Police district on May 9, 2023 was, which is described as a violence zone by the Chicago Police Department.

96.     Upon information and belief, Defendant Officer Rojas and Defendant Officer Salinas were parked at a gas station with the intent of looking for individuals to arrest for drugs or guns.

97.     Upon information and belief, observed Plaintiff Whitfield and his friend return to Plaintiff Whitfield's Dodge Challenger and noticed Plaintiff Whitfield's appearance.

98.     Upon information and belief, Defendant Officer Rojas and Defendant Officer Salinas racially profiled Plaintiff Whitfield and his friend based on their dreadlocks and attire, and the vehicle they were travelling in.

99.     Upon information and belief, Defendant Officer Rojas and Defendant Officer Salinas profiled Plaintiff Whitfield and his friend as individuals possessing drugs or weapons based on their race, complexion, hairstyle, clothing, and vehicle they were travelling in.

100.    The Defendant Officers on May 9, 2024 relied upon the unwritten and informal Chicago Police Department policies to pursue Plaintiff Whitfield and conduct a pre-textual search of Plaintiff Whitfield and his car based on their racial profiling.

101.    Upon information and belief, the Defendant Officers used the traffic stop as a pretext for making a police stop to search for guns and drugs in Plaintiff Whitfield's car.

102.    During the traffic stop, the Defendant Officers did not observe any evidence that could be used as probable cause to search Plaintiff Whitfield, and instead relied upon Plaintiff's past criminal history.

103.    Upon information and belief, the Defendant Officers were able to run a background search for Plaintiff Whitfield's arrest record on the police database LEADS during the traffic stop.

104.    Upon information and belief, the Defendant Officers observed that LEADS identified that Plaintiff Whitfield had previously been convicted for drug possession many years prior.

105.    Upon information and belief, the Defendant Officers believed that there were drugs located in Plaintiff Whitfield's vehicle.

106.    At all times during the stop, Plaintiff's vehicle did not have an odor or smell of cannabis or burnt cannabis in it.

107.    At all times relevant to this Complaint, Plaintiff Whitfield did not have tinted windows on his vehicle.

108.    At all times relevant to this Complaint, the police were able to see into Plaintiff's vehicle.

109.    Upon information and belief, the Defendant Officers could observe the inside of Plaintiff's vehicle.

110.    The police did not observe any drugs, weapons, or contraband in plain sight in Plaintiff's vehicle.

111.    During the Defendant Officer's search, the Defendant Officers did not find anything illegal in the vehicle.

112.    In making the arrest report, Defendant Salinas noted that he observed "the driver to be nervous with his hands shaking uncontrollably."

113.    In bringing the misdemeanor complaint for resisting arrest and obstruction of justice, Defendant Salinas in his affidavit stated that Plaintiff Whitfield committed the offense of resisting arrest and obstructing justice:

> "in that [Plaintiff Whitfield] knowingly resisted the performance of an authorized act within the officer's official capacity and engagement in the execution of his official duties, in that while known to defendant to be a peace officer did refused [sic] to exit the vehicle and was given ample opportunity to do so, which he failed to comply an attempt to defeat an arrest for violation of 720 ILCS."

Ex. A.

114.    The above circumstances did not give the Defendant Officers or their Defendant Supervising Officer probable cause to conduct an arrest of Plaintiff Whitfield.

115.    The above circumstances did not give the Defendant Officer or their Defendant Supervising Officer probable cause to conduct a search of Plaintiff Whitfield's vehicle.

116.    The actions of the Defendant Officer's actions, as detailed above, was willful and wanton, and retaliation for Plaintiff Whitfield requesting that their supervising officer be present during the traffic stop.

**COUNT I**
**42 U.S.C. § 1983 – Fourth Amendment**
**(Unlawful Search and Arrest)**

117.    Plaintiff Whitfield repeats and realleges by reference the allegations in paragraphs 1 through 116 as if fully set forth herein.

118.    The actions of Defendant Officers, described above, constituted an intentional violation of the Plaintiff's rights under the Fourth Amendment of the U.S. Constitution in violation of the Fourth and Fourteenth Amendment.

119.    The Defendant Officers supervisors were on notice that Plaintiff Whitfield had not physically resisted arrest or done anything to substantially interfere with their investigation, and thus were deliberately indifferent to the fact that they had no evidence or grounds to search Plaintiff and his vehicle.

120.    Further, Plaintiff Whitfield did not resist the Defendant Officers during their search, and thus there is no probable cause or basis to have arrested him for resisting arrest or obstructing justice.

121.    At all times relevant hereto, Defendant Officers Salinas and Rojas, and Defendant Sergeant Shine, were acting under the color of law and within the scope of their employment as police officers for the City of Chicago.

122.    On or about May 9, 2023, Defendant Officers Salinas and Rojas, along with Defendant Sergeant Shine, arrested Plaintiff Whitfield without probable cause.

123.    A false arrest is defined as an unlawful restraint of an individual's personal liberty. To prevail on a claim of false arrest, a plaintiff must show that they were restrained or arrested by the defendants and that the defendants acted without having reasonable grounds to believe that an offense was committed by the plaintiff. *See Neita v. City of Chi.*, 830 F.3d 494, 497 (7th Cir. 2016).

14

124. Defendants did not have reasonable grounds to believe that Plaintiff Whitfield had committed or was committing a crime. At the time of his arrest, Plaintiff Whitfield was not engaged in any illegal activity, nor was there any evidence or conduct that would provide Defendants with probable cause to believe that he had committed a crime.

125. Plaintiff Whitfield complied with all lawful orders and did not resist or obstruct Defendants' investigation during the traffic stop. The charges brought against Plaintiff Whitfield, including resisting/obstructing a peace officer and failure to carry/display a driver's license, were false and lacked any factual basis.

126. As a direct and proximate result of Defendants' actions, Plaintiff Whitfield was unlawfully detained, causing him to suffer physical injury, pain and suffering, emotional distress, humiliation, embarrassment, and the deprivation of his liberty.

127. Additionally, Plaintiff Whitfield incurred various expenses, including but not limited to legal fees, costs associated with electronic monitoring, and lost income due to his inability to conduct his business.

128. Defendants' actions were willful, wanton, and undertaken with a reckless disregard for Plaintiff Whitfield's rights under Illinois law and the Fourth Amendment of the United States Constitution.

129. As a proximate result of the above-detailed actions, Plaintiff was physically, financially, and emotionally injured, including the deprivation of his liberty and the taking of his person. In addition, the violations proximately caused Plaintiff mental anguish, embarrassment, and humiliation, and caused him to incur various expenses, including but not limited to additional rental costs and additional living expenses all to Plaintiff's financial losses.

130. For these reasons, Plaintiff Whitfield, demands judgment against the Defendant Officer Salinas and Defendant Officer Rojas, and Defendant Sergeant Shine, for compensatory damages, punitive damages, the costs of this action and attorneys' fees, and any such other and further relief as this Court deems equitable and just.

**COUNT II**
**42 U.S.C. § 1983**
**4th Amendment & *Monell* Violation**
**(Racial Profiling)**

131. Plaintiff Whitfield repeats and realleges by reference the allegations in paragraphs 1 through 116 as if fully set forth herein.

132. Plaintiff, as an African American, is a member of a protected class.

133. Defendant Officers searched and arrested Plaintiff without a reasonable and articulable suspicion of criminality as required by the Fourth Amendment and based solely on his race and appearance.

134. Defendant Officers conduct was undertaken with the purpose of depriving Plaintiff of the equal protection in violation of the Fourteenth Amendment.

135. Defendant Officers acted with deliberate indifference to the Fourteenth Amendment rights of Plaintiff.

136. Defendants' conduct is consistent with a pattern and practice of racial profiling that is embedded within the Chicago Police Department and a part of a city-wide policy by the Chicago Police Department.

137. In 2015, a shortly after the American Civil Liberties Union released a report detailing the City's use of stop and frisk, the ACLU of Illinois and CPD reached a settlement agreement to reform the practice of investigatory street stops known as stop and frisks.

138.     News stations such, as ABC 7 have documented that this policy of using traffic stops as pretexts to searches for evidence of other crimes has not stopped, and reportedly was encouraged in a department memo as recently as 2020.

139.     Studies commissioned by the Illinois Department of Transportation indicate that Black drivers are more likely to be searched or arrested than white drivers.[1]

140.     Recent lawsuits relating to traffic stops against African American men indicate that this practice was still present as of May 2023.

141.     Nine days after Plaintiff Whitfield was arrested, Gary Lewis, the plaintiff from *Lewis v. City of Chi.*, was an ***African American male*** with ***dreadlocks*** who was arrested by the Chicago Police Department in the ***same exact area*** that Plaintiff Whitfield was arrested in and had his vehicle searched during a traffic stop.

142.     Government studies and independent studies show that Black drivers are disproportionately targeted and stopped by the Chicago Police Department because of their race.

143.     Government studies and independent studies show that Black drivers are disproportionately pulled out of their vehicles and searched by the Chicago Police Department because of their race.

144.     Government studies and independent studies show that Black drivers are disproportionately subjected to force by the Chicago Police Department because of their race.

---

[1] *See* Illinois Dep't. of Transp., *Illinois Traffic & Pedestrian Stop Study: 2022 Annual Rpt. Pedestr. Stop. Analys.*, (accessed on June 2, 2024),
https://idot.illinois.gov/content/dam/soi/en/web/idot/documents/transportation-system/reports/safety/traffic-stop-studies/final--part-i-executive-summary-pedestrian-6-30-23.pdf ("Exhibit F").

145.    In 2023, the ACLU of Illinois sued the Chicago Police Department because of its pattern and practice of racially-profiling drivers. *See Wilkins v. City of Chi.*, No. 23-cv-04072 (N.D. Ill. filed June 26, 2023).

146.    As a direct and proximate result of the aforesaid acts of the Defendants, the Fourteenth Amendment rights of the Plaintiff were violated.

147.    As a direct and proximate result of the aforesaid acts of the Defendants, the Fourteenth Amendment rights of the Plaintiff were violated.

148.    As a proximate result of the above-detailed actions, Plaintiff was injured, including the deprivation of his liberty and the taking of his person. In addition, the violations proximately caused Plaintiff mental anguish, embarrassment, and humiliation, and caused him to incur various expenses, including but not limited to rent and additional living expenses, all to Plaintiff's damage.

149.    For the reasons stated above, Plaintiff Corris Whitfield, pursuant to 42 U.S.C. §1983, demands judgment against the Defendants, City of Chicago, Defendant Officer Salinas, Defendant Officer Rojas, and Defendant Sergeant Shine for compensatory damages, punitive damages, the costs of this action and attorneys' fees, and any such other and further relief as this Court deems equitable and just.

## COUNT III
### 42 U.S.C. § 1983 4th Amendment
### (Excessive Force)

150.    Plaintiff Whitfield repeats and realleges by reference the allegations in paragraphs 1 through 116 as if fully set forth herein.

151.    At all times relevant hereto, Defendant Officers Salinas and Rojas, and Defendant Sergeant Shine, were acting under the color of law and within the scope of their employment as police officers for the City of Chicago.

152.    The Fourth Amendment to the United States Constitution protects individuals from being subjected to excessive force by law enforcement officers during the course of an arrest, investigatory stop, or other seizure. This protection is applicable to the states through the Fourteenth Amendment.

153.    To establish a claim of excessive force under 42 U.S.C. § 1983, a plaintiff must show that the defendant's actions were objectively unreasonable considering the facts and circumstances confronting them, without regard to their underlying intent or motivation. *See Graham v. Connor*, 490 U.S. 386, 397 (1989).

154.    On May 9, 2023, during the course the traffic stop, Defendant Officers Salinas and Rojas, under the supervision of Defendant Sergeant Shine, used excessive force against Plaintiff Whitfield. Specifically, after Plaintiff Whitfield complied with the officers' instructions and stepped out of his vehicle with his hands up, the Defendant Officers tackled Plaintiff Whitfield to the ground and forcefully handcuffed him.

155.    The force used by Defendants Salinas and Rojas was excessive and unreasonable under the circumstances, as Plaintiff Whitfield was not resisting arrest, did not pose a threat to the officers or others, and was complying with the officers' instructions.

156.    As a direct and proximate result of the excessive force used by Defendant Officers, Plaintiff Whitfield sustained physical injuries, including scrapes and bruising to his arms and shoulder, and had his head pressed against the car. Plaintiff Whitfield also suffered emotional distress, fear, and mental anguish due to the excessive force used during his arrest.

157.    Defendant Sergeant Shine, as the supervising officer, was present at the scene and either directed, condoned, or failed to intervene in the use of excessive force by Defendant Officers Salinas and Rojas, thereby violating Plaintiff Whitfield's constitutional rights.

158.    Defendants' actions were willful, wanton, and undertaken with a reckless disregard for Plaintiff Whitfield's rights under the Fourth Amendment of the United States Constitution.

159.    As a direct and proximate result of the unlawful actions of the defendants, Plaintiff Whitfield suffered damages, including physical injuries, pain and suffering, emotional distress, mental anguish, embarrassment, humiliation, and the deprivation of his constitutional rights.

160.    For these reasons, Plaintiff Whitfield demands judgment against Defendant Officers Salinas and Rojas, and Defendant Sergeant Shine, for compensatory damages, punitive damages, the costs of this action and attorneys' fees, and any such other and further relief as this Court deems equitable and just.

### Count IV
### 42 U.S.C. § 1983 – Supervisory Liability

161.    Plaintiff Whitfield repeats and realleges by reference the allegations in paragraphs 1 through 116 as if fully set forth herein.

162.    Defendant Officers violated Plaintiff's right by intentionally racially profiling him and stopping him without a lawful basis.

163.    Defendant Officers violated Plaintiff's rights by falsely charging him with a crime for which they knew there was no probable cause.

164.    Defendant Sergeant Fine knew that Defendant Officers Salinas and Rojas racially profiled Plaintiff, stopped him without a lawful basis, and charged him with a crime for which there was no true probable cause.

165.    Defendant Sergeant Fine, assisted, and condoned Defendant Officer Salinas and Rojas' conduct.

166.     As a direct and proximate result of the unconstitutional conduct of Defendant Sergeant Fine, Plaintiff was harmed including, but not limited to, severe pain, physical injury, mental suffering, anguish and humiliation, and loss of dignity.

167.     For the reasons stated above, Plaintiff Corris Whitfield pursuant to 42 U.S.C. §1983, demands judgment against the Defendant Sergeant Fine, for compensatory damages, punitive damages, the costs of this action and attorneys' fees, and any such other and further relief as this Court deems equitable and just.

## COUNT V
### 42 U.S.C. § 1983 – 4th Amendment - *Monell Violation*
### (Conspiracy to Commit Civil Rights Violations)

168.     Plaintiff Whitfield repeats and realleges by reference the allegations in paragraphs 1 through 116 as if fully set forth herein.

169.     Defendant Officers and Defendant City reached an understanding, engaged in a sequence of events or course of conduct and otherwise agreed and conspired together to violate the constitutional rights of Plaintiff by conducting unlawful traffic stops as a pretext to search for evidence of other crimes.

170.     Each Defendant did reach this understanding and agreement and did engage in this course of conduct with the mutual purpose, objective and knowledge that it would deprive Plaintiff of his right of due process, as guaranteed by the constitution.

171.     Additionally, said conspiracy and joint action violated Plaintiff's 14th Amendment rights, under color of law, in contravention of 42 U.S.C. § 1983.

172.     Acting in furtherance of this plan and conspiracy, Defendants did commit overt acts, including the illegal arrest, seizure, detention, use of excessive force, and search of Plaintiff and his vehicle on May 9, 2023, as more fully alleged in the preceding paragraphs.

173.    The misconduct described in this Count was undertaken pursuant to the policy and practice of the Chicago Police Department in that:

a.    As a matter of both policy and practice, the Chicago Police Department directly encourages the type of misconduct at issue here by failing to adequately train, supervise and control its officers, and its failure to do so constitutes deliberate indifference;

b.    Further, the Chicago Police Department's encouragement of traffic stops as a pretext to other searches constitutes deliberate indifference to the Due Process Rights of individuals and citizens.

c.    As a matter of both policy and practice, the Chicago Police Department facilitates the type of misconduct at issue here by failing to adequately punish and discipline prior instances of similar misconduct, thereby leading Chicago Police Officers to believe their actions will never be scrutinized and, in that way, directly encourages future abuses such as those affecting Plaintiff; specifically, Chicago Police officers accused of misconduct are aware that the Office of Professional Standards will not fully investigate these accusations and will almost always refuse to recommend discipline even where the officer has engaged in wrongdoing;

d.    As a matter of widespread practice so prevalent as to comprise municipal policy, Officers of the Chicago Police Department abuse citizens in a manner like that alleged by Plaintiff in this Count on a frequent basis, yet the Chicago Police Department makes findings of wrongdoing in a disproportionately small number of cases;

e. Municipal policymakers are aware of, and condone and facilitate by their inaction, a "code of silence" in the Chicago Police Department, by which Officers fail to report misconduct committed by other Officers, such as the misconduct at issue in this case;

f. The City of Chicago has failed to act to remedy the patterns of abuse described in the preceding sub-paragraphs, despite actual knowledge of the same, thereby causing the types of injuries alleged here;

g. As a matter of express policy, the City of Chicago does not retain any records which are more than five years old documenting allegations of misconduct against police officers, thereby preventing the City from ascertaining any patterns of abuse which might develop over the course of a Police Officer's career;

h. As a matter of express policy, the City of Chicago refuses to take into consideration patterns of allegations of civil rights violations when evaluating the merits of any complaint.

i. The problem with the policy identified in this Complaint is that the City of Chicago encourages the use of unlawful traffic stops as pretexts to conduct searches for evidence of other crimes.

174. This course of conduct by Defendants described in this count was done willfully, maliciously, intentionally, or with reckless disregard and gross negligence, and directly and proximately caused injury and harm to Plaintiff.

175. As explained above, Plaintiff prays for judgment against Defendant Officers and Defendant City of Chicago in a fair and just amount sufficient to compensate him for the physical, emotional, and financial harms he suffered. Plaintiff also seeks a substantial sum in punitive

damages against Defendant Officers, costs and reasonable attorney fees, and all such other relief as this Court finds just and equitable.

<u>**COUNT VI**</u>
**Intentional Infliction of Emotional Distress (Illinois)**

176.     Plaintiff Whitfield repeats and realleges by reference the allegations in paragraphs 1 through 116 as if fully set forth herein.

177.     Defendant City of Chicago is sued in this to the doctrine of *respondeat superior*, in that Defendants performed the actions complained of while on duty and/or in the employ of Defendant City, and while acting within the scope of their respective employment.

178.     Defendant Officers' illegal arrest, unlawful seizure, and excessive force against Plaintiff were committed with intentional disregard for Plaintiff's innocence, and amount to extreme and outrageous conduct against Plaintiff.

179.     Defendants intended to inflict severe emotional distress upon Plaintiff and knew that there was a high probability that their conduct of arresting Plaintiff Whitfield after completing their search would cause him severe emotional distress and mental anguish.

180.     As a direct and proximate result of this illegal and malicious conduct, Plaintiff suffered extensive damages, including but not limited to severe physical and emotional harm, legal and other out-of-pocket costs and other damages which will be proven at trial.

181.     For these reasons, Plaintiff prays for judgment against Defendants in a fair and just amount sufficient to compensate him for the injuries he suffered, plus, Plaintiff seeks costs and reasonable attorney fees, and all such other relief as this Court finds just and equitable.

### Count VII
### Malicious Prosecution (Illinois)

182.    Plaintiff Whitfield repeats and realleges by reference the allegations in paragraphs 1 through 116 as if fully set forth herein.

183.    By the actions detailed above, Defendants knowingly sought to and did in fact maliciously prosecute Plaintiff on false charges for which they knew there was no probable cause.

184.    Defendant City is sued in this Count pursuant to the doctrine of *respondeat superior*, in that Defendants performed the actions complained of while on duty and/or in the employ of Defendant City, and while acting within the scope of this employment.

185.    As a direct and proximate result of the malicious prosecution, Plaintiff was damaged, including the value of his lost liberty, exposure to public scandal and disgrace, damage to his reputation, mental and emotional suffering, humiliation, embarrassment, and anguish.

186.    For these reasons, Plaintiff Corris Whitfield demands judgment against Defendants for compensatory damages, punitive damages, the costs of this action and attorneys' fees, and any such other and further relief as this Court deems equitable and just.

### Count VIII
### Indemnification

187.    Plaintiff Whitfield repeats and realleges by reference the allegations in paragraphs 1 through 116 as if fully set forth herein.

188.    Illinois law provides that public entities, such as Defendant City of Chicago, are directed to pay any compensatory damages on a tort judgment against an employee who was acting within the scope of his or her employment.

189.    At all relevant times, Defendant Officers were agents of Defendant City and employees of the Chicago Police Department acting within the scope of their employment.

Defendant City, therefore, is liable as principal for all torts committed by its agents, Defendant Officers.

190.    For these reasons, Plaintiff prays for judgment against Defendants in a fair and just amount sufficient to compensate her for the injuries she suffered, plus, Plaintiff seeks costs and reasonable attorney fees, and all such other relief as this Court finds just and equitable.

**WHEREFORE,** Plaintiff, Corris Whitfield, respectfully requests that this Honorable Court enter judgment in his favor and against Defendants, City of Chicago, Illinois, Chicago Police Officer John J. Salinas (#9479), Chicago Police Officer Anthony Rojas (#15065), and Chicago Police Sergeant Daniel K. Shine (#1443), and award the following relief:

1. **Compensatory Damages**: For physical injuries, pain and suffering, emotional distress, humiliation, embarrassment, fear, mental anguish, the deprivation of a normal life, lost time, lost income, and additional living expenses incurred because of Defendants' actions;

2. **Punitive Damages**: Against the individual Defendant Officers Salinas, Rojas, and Shine, in an amount sufficient to punish them for their willful, wanton, and reckless conduct and to deter similar misconduct in the future;

3. **Costs and Attorneys' Fees**: Awarding Plaintiff the costs of this action, including reasonable attorneys' fees, pursuant to 42 U.S.C. § 1988 and other applicable laws;

4. **Declaratory Relief**: A declaration that the acts and practices complained of herein are in violation of the Fourth and Fourteenth Amendments to the United States Constitution and Illinois law;

5. **Injunctive Relief**: Enjoining Defendants from engaging in the unconstitutional and unlawful conduct described herein and ordering the City of Chicago to institute appropriate policies, training, and supervision to prevent such conduct in the future;

6. **Such Other and Further Relief**: As this Court deems just and equitable.

7. **JURY DEMAND**: Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully Submitted,

*/s/ Benjamin C.R. Lockyer*
Benjamin C.R. Lockyer
John J. Mariane
Lockyer Law LLC
6515 W. Archer Ave.
Chicago, Illinois 60638

ben@lockyerlaw.com
(773) 340-0011

***Attorneys for Plaintiff Corris Whitfield***